### UNITED STATES v. RIGNEY & CO.

(District Court, E. D. New York. February 20, 1915.)

1. FOOD ⊜⟹15—FOOD AND DRUGS ACT—VIOLATIONS—"MISBRANDED."

That there was a custom in the trade to label packages so as to state approximately the quantity in liquid or solid measure nearest the general size of the package, such packages being known as commercial quarts, half gallons, etc., or that a seller's circulars and price lists, with reference to which sales were made to retailers, stated that the quantities specified were "commercial measure," did not excuse violations of Food and Drugs Act June 30, 1906, c. 3915, 34 Stat. 771, which provides, in section 8, as amended by Act March 3, 1913, c. 117, 37 Stat. 732 (Comp. St. 1913, § 8724), that drugs or food are "misbranded," within the meaning of that act, if the package or label bears any false or misleading statements, or if, in case of food in package form, the quantity of the contents be not plainly and conspicuously marked on the outside of the package in terms of weight, measure, or numerical count.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ⊜⟹15.

For other definitions, see Words and Phrases, First and Second Series, Misbrand.]

2. FOOD ⊜⟹15—FOOD AND DRUGS ACT—VIOLATIONS—DEFENSES.

That a defendant ceased the use of labels on packages containing food which were misleading as to quantity went only to the question of mitigation for a violation of the Food and Drugs Act.

[Ed. Note.—For other cases, see Food, Cent. Dig. § 14; Dec. Dig. ⊜⟹15.]

An information was filed against Rigney & Co. for a violation of the Food and Drugs Act. On motion to quash or dismiss the information. Motion denied.

William J. Youngs, U. S. Atty., of Brooklyn, N. Y., and Samuel J. Reid, Jr., of New York City, Asst. U. S. Atty.

Henry W. Baird, of New York City, for defendant.

CHATFIELD, District Judge. [1] This information was filed against the defendant corporation for shipping by interstate commerce a quantity of syrup in a package labeled "24 quarts com.," and also another quantity of syrup in a package bearing a label "12 half gallons com."

The shipments were alleged to have been an offense against the provisions of the Food and Drugs Act of June 30, 1906 (34 Stat. 771), as contained in section 8, which prohibits a false or mislead-

---

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing statement upon a package or label regarding the article contained therein, and under subdivision 3 of the portion of that section relating particularly to food, which provides (as amended March 3, 1913):

"Third. If in package form, the quantity of the contents be not plainly and conspicuously marked on the outside of the package in terms of weight, measure, or numerical count," etc.

The defendants subsequently withdrew their plea and sought to raise a question of fact as to the meaning of their label, and to contend that, under the law, this meaning was neither misleading to the public or their customers, nor false in statement when considered from the point of view of those who should be held responsible for knowledge as to ordinary trade practices.

The defendants therefore interposed a motion to dismiss or quash the indictment, based upon affidavits showing that the packages in question contained, in the one case bottles, substantially of the size in exterior dimensions of the ordinary quart bottle, and in the other case cans, again in general external size and appearance of a half-gallon or two-quart size, but the *labels* upon the bottles and cans themselves contained no statement of quantity. The price for which the articles were sold depended (of course) upon the wholesale price charged therefor, as the ordinary downward limit under competition.

These bottles and cans were, as shown by the affidavits, packed in wooden boxes, upon which a stencil was used to mark in black letters the syrup label and also the words complained of in the information, in one case "24 quarts 17 com.," and in the other case "12 half gallons 19 com." The affidavits also show, and these matters are not disputed by the government, that the shipments were to wholesalers, and not to retail customers, and were all made upon prices quoted for the quantity shown in the circulars, and were billed to the wholesalers by the same description, as, for instance:

"No.  1   com'l half pts. (7 oz.)
"No.  4   square qts. (5 to gal.)
"No. 19   half gallons commercial measure 1 dozen to case gross wt. 70 lbs.
"No. 21   gallons, commercial measure, 1/2 dozen to case 63 lbs.
"No. 23   5 gallons, cased full measure gross weight 60 lbs."

The only points contested by the government upon this motion are the meaning of the words and the allegation that the trade understood the meaning of the words "quarts," "1/2 gallon," etc., when used under what is alleged by the defendants to be a well-known practice of selling packages containing smaller quantities, but labeled in a so-called descriptive way to state approximately the quantity in liquid or solid measure nearest the general size of the package. The government produced certain affidavits in which wholesalers deny that such meaning of the words, "commercial quart," or "commercial half gallon," was well known and commonly used in this descriptive sense in the trade.

It is unnecessary to consider whether the practice of attracting trade by apparent intimation of cheap prices, but in reality by a saving of the actual quantity sold, and by holding out to the public or advertising misleading statements, by which the customer may be de-

ceived, but which the wholesaler and retailer, or those initiated into the trade secrets, understand are false, should be treated as reprehensible, nor need we consider whether Congress has the power to pass a statute prohibiting such practices, in interstate commerce, when the injury to the public demands. The mere queries answer themselves.

In the present case we have only to do with the question whether the labels (interpreted from the price lists or from custom, by the persons to whom the goods were shipped) were false and misleading in their statements of the quantity contained in the package, and whether the contents were plainly and correctly stated on the outside thereof.

If the label used would allow the deception of the public and unfair methods of advertising, through the complicity of the retail dealer, it becomes evident that this is one of the evils which the statute was intended to prevent, and that Congress did not pass this law for the protection of the retailer alone.

There is nothing before the court, and no authority in dictionary, text-book, or statute, to vindicate or uphold the establishment of a different system of liquid and weight measures than those sanctioned by law and general use, even though a lax and vicious reduction in quantity, as a matter of trade practice, is frequently found when no legal prohibition exists.

[2] It has appeared upon the argument of the motion that the defendant ceased the use of these labels and has made its measures and literature correspond to the requirements of the department, under the Pure Food Law, since its attention has been called thereto, and now disclaims any desire to be a party to violations of the statute or acts tending to deceive the public. This is what would be expected from any person or house in reputable business, and goes only to the question of mitigation, for an act which at the time, even though not appreciated, was a violation of the Pure Food Law.

The motion to dismiss or quash will be denied, and the defendants will be directed to plead over.